1  HEATHER E. WILLIAMS, #122664
   Federal Defender
2  LEXI P. NEGIN, #250376
   Assistant Federal Defender
3  801 I Street, 3rd Floor
   Sacramento, CA  95814
4  Tel: 916-498-5700/Fax 916-498-5710

5  Attorney for Defendant
   SCOTT HOWARD
6

7

8                IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

   UNITED STATES OF AMERICA,          Case No. 2:18-cr-100 JAM
11
                Plaintiff,            MOTION TO SUPPRESS EVIDENCE AND
12                                    STATEMENTS OBTAINED IN VIOLATION OF
        v.                            THE FOURTH AMENDMENT
13
   SCOTT HOWARD,                      DATE:   June 11, 2019
14                                    TIME    9:15 a.m.
                Defendant.            JUDGE: Hon. John A. Mendez
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

A.    SUMMARY OF ARGUMENT ........................................................................... 1

B.    HISTORY OF THE FBI'S PLAYPEN INVESTIGATION ................................. 2

C.    THE NINTH CIRCUIT'S OPINION IN *UNITED STATES V. HENDERSON* ................. 4

D.    THE TIMING OF THE WARRANT IN MR. HOWARD'S CASE MAKES HIS CASE
      DIFFERENT FROM *HENDERSON* .................................................................... 7

E.    THE AFFIDAVIT IN SUPPORT OF THE WARRANT FOR MR. HOWARD'S
      RESIDENCE AND PROPERTY CONTAINS MISLEADING INFORMATION AND
      OMITS MATERIAL INFORMATION IN VIOLATION OF *FRANKS V. DELAWARE* . 7

F.    SPECIFIC RELEVANT FACTS OF MR. HOWARD'S CASE ........................................ 9

G.    THE GOOD-FAITH EXCEPTION DOES NOT APPLY IN MR. HOWARD'S CASE 12

H.    THE DOJ MADE AN "OBVIOUS" MISTAKE OF LAW WHEN IT APPLIED FOR
      THE WARRANT IN MR. HOWARD'S CASE ............................................... 14

I.    THE WARRANT IS DEFECTIVE BECAUSE IT DOES NOT ALERT THE
      MAGISTRATE JUDGE THAT ITS PROBABLE CAUSE INFORMATION WAS
      ILLEGALLY OBTAINED ............................................................................. 18

J.    SUPPRESSION OF THE EVIDENCE AGAINST MR. HOWARD IS AN
      APPROPRIATE REMEDY ............................................................................ 20

CONCLUSION .................................................................................................. 21

Motion to Suppress

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3    *Franks v. Delaware*, 438 U.S. 154 (1978) ........................................................ 2, 7, 8, 9

4    *Groh v. Ramirez*, 540 U.S. 551 (2004) ................................................................. 15

5    *Hope v. Pelzer*, 536 U.S. 730 (2002). ................................................................. 15

6    *Hudson v. Michigan*, 547 U.S. 586 (2006) ........................................................... 15

7    *Kentucky v. King*, 563 U.S. 452 (2011) ............................................................... 19

8    *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) .................... 19

9    NLRB v. A-Plus Roofing, Inc., 39 F.3d 1410 (9th Cir. 1994) ..................................... 6

10   *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) ......... 19

11   *United States v. Adams*, 2016 WL 4212079 (M.D. Fl. Aug. 10, 2016) ........................ 15

12   *United States v. Allain*, 213 F. Supp. 3d 236 (D. Mass. 2016) ................................ 14

13   *United States v. Ammons*, 207 F. Supp. 3d 732 (W.D. Ky. 2016) ............................. 14

14   *United States v. Arterbury* 15-cr-182 N.D.Oklahoma ........................................... 13

15   *United States v. Artis*, ____ F.3d ____, 2019 WL 1375260 (9th Cir. March 27, 2019) .............. 18

16   *United States v. Bee*, 2017 WL 424889 (W.D. Mo. Jan. 31, 2017) ............................ 15

17   *United States v. Bishop*, 264 F.3d 919 (9th Cir. 2001) ........................................ 20

18   *United States v. Broy*, 209 F. Supp. 3d 1045 (C.D. Ill. 2016) ................................ 14

19   *United States v. Darby*, 190 F. Supp. 3d 520 (E.D. Va. 2016) ................................ 15

20   *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005) .......................................... 19

21   *United States v. Deichert*, 232 F. Supp. 3d 772 (E.D.N.C. 2017) ............................ 14

22   *United States v. Dorsheff*, 2017 WL 1532267 (C.D. Ill. Apr. 27, 2017) ..................... 14

23   *United States v. Dzwonczyk*, 2016 WL 7428390 (D. Neb. Dec. 23, 2016) ................. 15

24   *United States v. Eure*, 2016 WL 4059663 (E.D. Va. July 28, 2016) .......................... 15

25   *United States v. Gaver*, 2017 WL 1134814 (S.D. Ohio Mar. 27, 2017) ...................... 15

26   *United States v. Halgren*, 2017 WL 3741558 (W.D. Tex. Aug. 30, 2017) ................... 14

27   *United States v. Hammond*, 263 F. Supp. 3d 826 (N.D. Cal. Dec. 8, 2016) ............... 14

28   *United States v. Henderson*, 906 F3rd 1109 (9th Cir. 2018) ............................. passim

*United States v. Johnson*, 2016 WL 6136586 (W.D. Mo. Oct. 20, 2016) ................................... 15

*United States v. Jones*, 565 U.S. 400 (2012) ............................................................................... 6

*United States v. Kahler*, 236 F. Supp. 3d 1009 (E.D. Mich. 2017) ........................................... 14

*United States v. Kienast*, 907 F.3d 522 (7th Cir. 2018) ............................................................ 14

*United States v. Knowles*, 207 F. Supp. 3d 585 (D.S.C. 2016) .................................................. 14

*United States v. Krueger*, 809 F.3d 1109 (10th Cir. 2015) ......................................................... 6

*United States v. Leonard*, 2017 WL 4478330 (E.D. Va. Oct. 6, 2017) ..................................... 15

*United States v. Levin*, 15-cr-10271 D.Massachusetts .......................................................... 13, 14

*United States v. Matish*, 193 F. Supp. 3d 585 (E.D. Va. 2016) ................................................ 15

*United States v. McGough*, 412 F.3d 1232 (11th Cir. 2005) ..................................................... 18

*United States v. McLamb*, 220 F. Supp. 3d 663 (E.D. Va. 2016) ............................................. 15

*United States v. Michaud*, 15-cr-5351 W.D. Washington ..................................................... 13, 16

*United States v. Moorehead*, 912 F.3d 963 (6th Cir. 2019) ...................................................... 14

*United States v. Mowatt*, 513 F.3d 395 (4th Cir. 2008) ............................................................ 19

*United States v. O'Neal*, 17 F.3d 239 (8th Cir. 1994) .............................................................. 18

*United States v. Owens*, 2016 WL 7053195 (E.D. Wis. Dec. 5, 2016) ..................................... 15

*United States v. Pawlak*, 237 F. Supp. 3d 460 (N.D. Tex. 2017) ............................................. 14

*United States v. Perdue*, 237 F. Supp. 3d 471 (N.D. Tex. 2017) ............................................. 14

*United States v. Reilly*, 76 F.3d 1271 (2d Cir.) ................................................................... 18, 19

*United States v. Stamper*, 15-cr-109 S.D. Ohio ................................................................... 13, 16

*United States v. Taylor*, 250 F. Supp. 3d 1215 (N.D. Ala. 2017) ............................................. 14

*United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985) .......................................................... 18

*United States v. Torres*, 2016 WL 4821223 (W.D. Tex. Sep. 9, 2016) ..................................... 15

*United States v. Underwood*, 725 F.3d 1076 (9th Cir. 2013) .................................................... 12

*United States v. Vasey*, 834 F.2d 782 (9th Cir. 1987) .......................................................... 18, 19

*United States v. Vortman*, 2016 WL 7324987 (N.D. Cal. Dec. 16, 2016) .................................. 15

*United States v. Wanless,* 882 F.2d 1459 (9th Cir. 1989) .......................................................... 18

*United States v. Werdene*, 15-cr-434 E.D. Pennsylvania ....................................................... 13, 14

*United States v. Workman*, 863 F.3d 1313 (10th Cir. 2017) ...................................................... 14

iii

*Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) .................................. 19

*Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ......................... 19

**Statutes**

28 U.S.C. section 636 ......................................................................................................... 5

**Other Authorities**

"Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal
    Investigations" - DOJ Manual ................................................................... 15

https://www.justice.gov/sites/default/files/criminal-ccips/legacy/2015/01/14/ssmanual2009.pdf15

Preliminary Draft of August 2014 Proposed Amendments to the Federal Rules of Appellate,
    Bankruptcy, Civil and Criminal Procedure ............................................................ 17

**Constitutional Provisions**

Fourth Amendment ............................................................................................ passim

Motion to Suppress

HEATHER E. WILLIAMS, #122664
Federal Defender
LEXI P. NEGIN, #250376
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700/Fax 916-498-5710

Attorney for Defendant
SCOTT HOWARD

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:18-cr-100 JAM |
| Plaintiff, | MOTION TO SUPPRESS EVIDENCE AND STATEMENTS OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT |
| v. | |
| SCOTT HOWARD, | DATE:  June 11, 2019 |
| Defendant. | TIME    9:15 a.m. |
| | JUDGE: Hon. John A. Mendez |

Mr. Howard, by and through undersigned counsel, hereby respectfully moves this Honorable Court to suppress evidence obtained in violation of the Fourth Amendment.

In support of his motion he states the following:

A.     SUMMARY OF ARGUMENT

In April of 2016, the FBI, with the government's approval, sought, obtained and executed a search warrant for Mr. Howard's residence and other property located therein.  See Attachment A.  During the search, they seized certain incriminating evidence and Mr. Howard gave incriminating statements stemming from that search both immediately following the search and then at a later date.  Mr. Howard now seeks an order precluding the government from being able to use that evidence against him as it was obtained in violation of his Fourth Amendment rights.

The probable cause offered in the search warrant for Mr. Howard's property – specifically his IP address among other identifying information from his digital device - was based on information obtained by the FBI in March of 2015, pursuant to an unlawful warrant issued by a magistrate judge in the Eastern District of Virginia (hereinafter "the EDVA

warrant")[1].  The EDVA warrant unlawfully authorized the FBI to digitally search and seize evidence outside of its district from Mr. Howard's digital devices located in the Eastern District of California.  The EDVA warrant has been found to be unlawful as to the search of computers located outside of the EDVA by a large majority of District Courts and every Circuit Court presented with the issue.  *See Supra*.

At the time of the application for the warrant in Mr. Howard's case, April 4, 2016, the government and law enforcement were on notice that the EDVA warrant was unlawful and that evidence obtained therefrom was illegally obtained.  The government did not disclose the fact that the EDVA warrant was unlawful and that the evidence to support probable cause had been illegally obtained in its affidavit in support of the warrant to the Eastern District of California magistrate judge.  Furthermore, the affidavit is vague enough as to how the IP address was obtained – making it seem as if the IP address could have been seen by the FBI monitoring the Playpen website which would not have been a Fourth Amendment violation -  to mislead the magistrate judge to a degree that constitutes a *Franks* violation.  Even though it had the knowledge that the EDVA warrant was unlawful and that Mr. Howard's IP address was obtained via that unlawful warrant, the FBI, with the government's review and approval, based the probable cause to search Mr. Howard's residence and digital devices, on the evidence it had unlawfully obtained from the EDVA warrant – specifically an Internet Protocol ("IP") address and other identifying information.  Finally, the good-faith exception does not apply here because the warrant in Mr. Howard's case was sought with the knowledge that the evidence supporting probable cause was illegally obtained.

**B.       HISTORY OF THE FBI'S PLAYPEN INVESTIGATION**

To place the timing of this case in context, and to show why it is different from other cases that have found the good-faith exception applies to the unlawful searches stemming from the EDVA warrant, a summary of the FBI investigation is enlightening.  The background of this investigation has been fully described in many legal opinions.  Most recently the Ninth Circuit

---

[1] This motion does not assert that the activity observed by the FBI while monitoring Playpen was illegally obtained, only that the information obtained from Mr. Howard's digital devices was obtained by way of an illegal search and seizure.

Motion to Suppress

1   Court of Appeals in *United States v. Henderson*, 906 F3rd 1109 (9th Cir. 2018), described the

2   facts of the "Playpen" website investigation as follows:

3       In September 2014, FBI agents began investigating a child pornography related website

4   known as "Playpen," which was accessible on the Tor computer network.

5       The Tor network consists of a computer network and software that provide Internet users

6   with online anonymity by obscuring how and where users get online.  Users first download Tor

7   software onto their computers to connect to a network of computers—known as "nodes" or

8   "relays"—operated by volunteers.  When connected to Tor, a user's Internet traffic does not go

9   directly to the website.  Instead, the user is connected to a volunteer node or relay, which passes

10  the user's Internet traffic to another volunteer node or relay, and so on, until it transits through an

11  "exit node" and connects to the website.  This allows users to mask their true location because

12  the destination website will only know the IP address of the exit node computer, not the original

13  computer that sought to access the website.  Tor users can also access "hidden services," which

14  are websites hosted on the Tor network that do not reveal its location.

15      Playpen operated as a Tor hidden service, accessible only through the Tor network.  A

16  visitor to the site logged in with a username and password and then could view the content on the

17  website, which included discussion forums, private messaging services, and images of child

18  pornography.

19      The FBI learned the Playpen website was hosted on a server in North Carolina.  In

20  January 2015, the FBI executed a search warrant in the Western District of North Carolina and

21  seized the server and website.  Rather than shut down the website, however, the FBI placed a

22  copy of the seized server, including the child pornography contained on Playpen, onto a

23  government-controlled server in Virginia.

24      On February 20, 2015, federal prosecutors obtained a search warrant from a magistrate

25  judge in the Eastern District of Virginia, authorizing it to deploy a network investigative

26  technique (NIT) onto the computers of users visiting the Playpen site, "wherever located," when

27  they logged into the site now controlled by the government[2].  The NIT was computer software

28
_____

[2] This was in direct contradiction to DOJ policy. *See supra.*

3

Motion to Suppress

1  inserted into the Playpen site that purported to collect information directly from the user's

2  computer and then transmitted that information back to the FBI[3].  The NIT collected information

3  included the user's IP address.  The government also obtained authorization from a district judge

4  to intercept electronic communications sent on the site in real time under the Wiretap Act.

5        The FBI operated Playpen in Newington, Virginia, from February 20, 2015, until March

6  4, 2015, at which time Playpen ceased to operate. Between February 20, 2015, and March 4,

7  2015, law enforcement agents monitored electronic communications of users of Playpen.

8  Before, during, and after its seizure by law enforcement, law enforcement agents viewed,

9  examined and documented the contents of Playpen.  Counsel believes that some of the probable

10  cause information in the affidavit in support of the warrant for Mr. Howard's property was

11  information observed by the FBI while monitoring the website, as opposed to the information

12  received via NIT – IP address and other identifying information - which is the subject of this

13  motion.

14        Although the government was authorized to deploy the NIT for 30 days, on March 4,

15  2015, it stopped deploying the NIT and took the Playpen website offline.  By then, the FBI had

16  collected the IP addresses of thousands of computers across the country, which it used to make

17  individualized federal cases nationwide.  Mr. Howard's is one of those cases.

18      **C.**      **THE NINTH CIRCUIT'S OPINION IN *UNITED STATES V. HENDERSON***

19        The current state of the law with regard to the Playpen searches in the Ninth Circuit is the

20  Court's opinion in *Henderson*.  *Henderson* finds that the EDVA warrant was unconstitutional as

21  to computers located outside of the EDVA.  Thus there is no question that the NIT was an

22  unconstitutional search and seizure of information from Mr. Howard's digital device.  *Henderson*

23  further finds that suppression is not appropriate because of the good-faith exception.  Mr.

24  Howard's case can be distinguished from *Henderson* because by the time of the warrant in his

25

26

[3] Despite Court orders requiring the government to allow the source code of the NIT to be
evaluated by objective forensic experts, the government has refused such scrutiny and dismissed
cases rather than turning over the software for review. See https://www.nyulawreview.org/wp-
content/uploads/2018/10/NYULawReview-93-4-Garcha.pdf for a review of the issue of the
government keeping the NIT source code from objective legal review.

Motion to Suppress

case, the government could no longer have good-faith about the legality of the EDVA warrant. Counsel understands that counsel for *Henderson* is seeking *certiorari* before the Supreme Court of the United States.  Undersigned acknowledges the current *Henderson* opinion at 906 F.3d 1109 is controlling and binding upon this Court.  Mr. Howard's position is that *Henderson* wrongly held that good-faith exception applies to the Playpen warrants obtained based on evidence illegally obtained pursuant to the EDVA warrant regardless of timing and herein incorporates and adopts the arguments made by *Henderson* in his motion for rehearing *en banc* and his petition for *certiorari*.

However, this Court need not disagree with *Henderson* because the timing of the warrant application in Mr. Howard's case makes his case different from *Henderson* and other Circuit cases and precludes the application of good faith in his particular case.

The *Henderson* Court clearly held the NIT warrant used to search Mr. Howard's computer violated the plain text of Rule 41(b), which at the time only allowed a magistrate judge "to issue a warrant to search for and seize a person or property located within the district." 906 F.3d at 1113. (quoting Fed. R. Crim. P. 41(b)(1) (2015).  There was no dispute that the NIT warrant issued in the Eastern District of Virginia authorized a search of Henderson's computer in Northern California as it similarly authorized a search of Mr. Howard's computer in the Eastern District of California.  Following its sister Circuits, *Henderson* rejected the government's argument that the NIT warrant was a tracking device warrant authorized under Rule 41(b)(4).  *Id* at 1114.

It noted that Rule 41(b) was amended on December 1, 2016 to "plainly…'authorize[] warrants such as the NIT warrant here.'" *Id.* (*quoting United States v. Werdene*, 883 F.3d 204, 206, n.2 (3d Cir. 2018)).  Thus, the *Henderson* Court believed the "fact that Rule 41 was amended to authorize specifically these sorts of warrants further supports the notion that Rule 41(b) did not previously do so." *Id.*

The *Henderson* Court also rejected the government's argument that Rule 41 was "merely a technical 'venue provision.'" *Id* at 1115.  It explained that federal magistrate judges "'are creatures of statute,'" specifically 28 U.S.C. § 636 which "defines the scope of a magistrate

5

judge's authority, imposing jurisdictional limitations on the power of magistrate judges that cannot be augmented by the courts." (quoting *NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994)).  Section 636 authorizes magistrate judges to exercise powers contained within the Federal Rules of Criminal Procedure, and thus Rule 41(b) is "the sole source of the magistrate judge's purported authority to issue the NIT warrant in this case."  *Id.*  The *Henderson* Court found the Eastern District of Virginia magistrate judge "exceeded the scope of her authority and jurisdiction" because Rule 41(b) did not permit her to authorize a search of Henderson's computer in the Northern District of California.  *Id* at 1116.

The *Henderson* Court found this violation constitutional.  It explained the Fourth Amendment "'must provide at a minimum the degree of protection…afforded when it was adopted.'"  *Id* at 1116.  (*quoting United States v. Jones*, 565 U.S. 400, 411 (2012).  Citing Blackstone, the *Henderson* Court noted that "[a]t the time of the framing," a warrant could only be executed "so far as the jurisdiction of the magistrate and himself extends" and that "acts done beyond, or without jurisdiction…are utter nullities."  *Id.*  (quotations, citations and brackets omitted).  Citing a Tenth Circuit opinion by then-Judge Gorsuch, it explained:

> [L]ooking to the common law at the time of the framing it becomes quickly obvious that a warrant issued for a search or seizure beyond the territorial jurisdiction of a magistrate's powers under positive law was treated as no warrant at all—as *ultra vires* and void *ab initio* . . .—as null and void without regard to potential questions of 'harmlessness.'

*Id.*  (*quoting United States v. Krueger*, 809 F.3d 1109, 1123 (10th Cir. 2015) (Gorsuch, J., concurring) (quotations omitted).  The *Henderson* Court noted both the Third and Eighth Circuits agreed the Rule 41 violation during the NIT operation was "a fundamental, constitutional error."  *Id.* (*citing Werdene*, 883 F.3d at 214; *United States v. Horton*, 863 F.3d 1041, 1049 (8th Cir. 2017)).  The *Henderson* Court agreed, concluding, "a warrant purportedly authorizing a search beyond the jurisdiction of the issuing magistrate judge is void under the Fourth Amendment."  *Id.*

Despite this clear mistake of law, the *Henderson* Court declined to suppress the evidence because it determined the government acted in good faith and the exclusionary rule did not apply.  *Id* at 1117.  Although "every circuit court that has addressed the question has found the NIT warrant violated Rule 41," and the Henderson Court found the violation was—in the words

Motion to Suppress

of then-Judge Gorsuch— an "**obvious**" violation of the Fourth Amendment from the time of the framing, it nonetheless believed the "legality" of the NIT was "unclear." *Id.* (*citing United States v. McLamb*, 880 F.3d 685, 691 (4th Cir. 2018)) (quotations omitted).

Second, the *Henderson* Court found no evidence that the FBI officers involved in the NIT operation acted in bad faith. *Id.* Instead, it held the good-faith exception applied "because the issuing magistrate's lack of authority has no impact on police misconduct." *Id.* (*quoting Werdene*, 883 F.3d at 216-17) (quotations omitted). It believed "penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* (*quoting Horton*, 863 F.3d at 1050) (quotations omitted).

Finally, the *Henderson Court* noted suppression was "unlikely to deter future violations of this specific kind" because Rule 41 was amended in December 2016, after the NIT operation, to allow a magistrate judge to authorize a search of a computer in another district under certain circumstances. *Id.*

### D.    THE TIMING OF THE WARRANT IN MR. HOWARD'S CASE MAKES HIS CASE DIFFERENT FROM *HENDERSON*

The *Henderson* Court ruled that the EDVA warrant is void under the Fourth Amendment. Thus, there is no question that the information obtained by the FBI from Mr. Howard's digital device was obtained in violation of the Fourth Amendment.

The questions before this Court are therefore:  1) whether the affidavit misled the magistrate court in violation of *Franks v. Delaware*, 438 U.S. 154, 165 (1978); and 2) whether the "good faith" exception applies to the particular circumstances of this case. Mr. Howard submits that the affidavit did mislead the magistrate court in fatal ways and that the good-faith exception does not apply.

### E.    THE AFFIDAVIT IN SUPPORT OF THE WARRANT FOR MR. HOWARD'S RESIDENCE AND PROPERTY CONTAINS MISLEADING INFORMATION AND OMITS MATERIAL INFORMATION IN VIOLATION OF *FRANKS V. DELAWARE*

Mr. Howard's case is different because the warrant in his case was sought after two District Courts had found the NIT warrant illegal and at a time when the issue was being actively

litigated.  The FBI agents and Assistant United States Attorneys seeking the warrant had reason to read Rule 41 and understand that two District Courts had found that Rule 41 had been violated.  In addition, DOJ policy was consistent with Rule 41 and advised that a warrant must be sought to only search computers within its district.  Despite this knowledge, the affidavit in support misleads the magistrate judge to believe that its probable cause was obtained legally.

The first way the affidavit was misleading is that it failed to identify "Playpen" as the website involved.  See Attachment A at p. 9.  The warrant purports to need to the keep the true name of the website out of the affidavit because it was an ongoing investigation.  But by March of 2016, the Playpen investigation was already news.  *See* https://motherboard.vice.com/en_us/article/jpgm7d/how-the-fbi-identified-suspects-behind-the-dark-webs-largest-child-porn-site-playpen investigation.  It had been the subject of motions to suppress and public orders by two district courts.

The affidavit could have easily informed the Magistrate Judge of the name of the website as the warrant was kept under seal, and certainly the name of the website could have been kept redacted for the public unsealing.  Instead, the affidavit used the word "Website A." This obfuscated the ability of the magistrate to easily recognize that this was one of the Playpen cases.

The affidavit further did not reveal that there was at the very least a question of the legality of the EDVA warrant, that the Playpen warrant had been challenged throughout the country, that many motions to suppress were pending, that the warrant was an "obvious" violation of Rule 41, and that at least two District Courts had so held.  This omission is a violation of *Franks*.

The more fundamental problem with the affidavit is illustrated below. While the paragraphs supporting probable cause for Mr. Howard's property are not inaccurate, they are misleading in a fatal way.  By combining the information it obtained by monitoring "Website A" and the information it obtained from the deployment of the NIT, the magistrate judge could not know that the IP address was obtained only by way of a search and seizure of Mr. Howard's device via NIT – as opposed to via the real time monitoring by law enforcement.  In other words, the affidavit does not explain that the IP address was only obtained by way of the EDVA

1  warrant.  If it had, the magistrate judge, who is presumed to know the rules that govern her

2  authority, may have realized that the EDVA warrant could not authorize the FBI to search

3  computers outside of its district and that thus the probable cause evidence had been obtained

4  illegally and must be excised from the warrant.  As outlined below, this misleading information

5  that blends what the FBI witnessed itself and what it obtained by searching Mr. Howard's

6  computer is a fatal flaw to the warrant pursuant to *Franks* and its progeny.

7          F.      **SPECIFIC RELEVANT FACTS OF MR. HOWARD'S CASE**

8          Once it had Mr. Howard's IP address from the NIT, the FBI spent the next year, from

9  March of 2015 to April 4, 2016, investigating to determine the service address and registered

10 user for the IP address and to verify that the service address and register user were the same as in

11 February 2015.  The FBI investigation led them to Mr. Howard's residence as the service address

12 for the IP address that accessed Playpen in February of 2015.

13         The FBI then applied for, with the United States Attorneys' approval, a search warrant

14 for Mr. Howard's residence and devices on April 4, 2016.  The warrant was executed on April

15 11, 2016.

16         The affidavit in support of the warrant generally educates the magistrate judge about the

17 investigation and that the NIT obtained identifying information including IP addresses.

18 However, when it comes to the specific probable cause for Mr. Howard's property the affidavit

19 misleads the magistrate judge by not distinguishing between information it lawfully obtained by

20 logs and monitoring the website from the critical IP address it unlawfully obtained by way of the

21 NIT[4].   The warrant states:

22

23

24

25

26

27

28

---

[4] Counsel does not have the logs or other data documenting the FBI actions, but believes that the only way for the FBI to have Mr. Howard's IP address is via the NIT.  An evidentiary hearing is requested if the government disputes this assertion.

Motion to Suppress

12

**"hilar13" ON "Website A"**

13      25. According to data obtained from logs on "Website A," monitoring by law enforcement and

14 the deployment of a NIT, a user with the user name "hilar13" engaged in the following activity on

15 "Website A."

16      26. The profile page of user "hilar13" indicated this user originally registered an account on

17 "Website A" on November 3, 2014.  Profile information on "Website A" may include contact

18 information and other information that is supplied by the user.  It also contains information about

19 that user's participation on the site, including statistical information about the user's posts to the site

20 and a categorization of those posts.  According to the user "hilar13s" profile, this user was a Normal

21 Member of "Website A."  Further, according to the Statistics section of this user's profile, the user

22 "hilar13" had been actively logged into the website for a total of approximately 22 hours, 42

23 minutes, and 47 seconds, between the dates of November 3, 2014 and March 3, 2015.

*See* Attachment A p. 16.  The warrant goes on to state:

24

**IP Address and Identification of User "hilar13" on "Website A"**

25      27. According to data obtained from logs on "Website A," monitoring by law enforcement, and

26 the deployment of a NIT, on February 28, 2015, the user "hilar13" engaged in the following activity

27 on "Website A" from IP address 67.182.160.60.  During the session described below, this user

28 browsed "Website A" after logging into "Website A" with a username and a password.

16

*Id.*  The above paragraph is misleading because it does allow the reader to know that the IP

address was obtained from the NIT alone as opposed to from logs or monitoring.  The warrant

goes on without clarifying the point about the method by which the IP address was obtained:

10

Motion to Suppress

28. On February 28, 2015, the user "hilar13" with IP address 67.182.160.60 accessed the post titled, "Daphne and Dad." Among other things, this post contained links to external websites for downloading videos, along with passwords.

29. During the following additional sessions, the user "hilar13" also browsed "Website A" after logging into "Website A" with a username and password. During these sessions, the user's IP address information was not collected:

    a.  On March 5, 2015, the user "hilar13" accessed a post that contained a link to an image that depicted a female child being orally penetrated by an adult penis.

    b.  On March 5, 2015, the user "hilar13" accessed a post that contained a link to an image that depicted a prepubescent female with legs spread apart and vagina fully exposed. A substance that appears to be semen is spread all over the genital area of the child.

Attachment A p. 17. The warrant then states:

32. Among the information collected by the NIT when it was deployed against "hilar13" was the logon name "Sally" which matches the first name of the Comcast subscriber at the SUBJECT PREMISES, during the time period of February and March 2015. In addition, the NIT captured the host name "SallyScott[5]."

*Id.* By not including the critical IP address as information obtained by the NIT in paragraph 32, in combination with paragraphs 25-29, the magistrate judge was misled into believing that the IP address could have been obtained other than by the NIT.

Incriminating evidence and statements were obtained during the execution of the search warrant. Mr. Howard also seeks to suppress the additional statements he made during a visit to the FBI office on February 7, 2017, to retrieve his property seized during the search warrant that was being returned to him.

/ / /

/ / /

/ / /

11

Motion to Suppress

### G.    THE GOOD-FAITH EXCEPTION DOES NOT APPLY IN MR. HOWARD'S CASE

The government bears the burden of showing that the good-faith exception applies. *See United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013).  In determining whether to apply the good-faith exception to the exclusionary rule, courts have long "distinguishe[d] between mistakes of fact and mistakes of law because mistakes of law can be deterred more readily than mistakes of fact."  *United States v. Song Ja Cha*, 597 F.3d 995, 1005 (9th Cir. 2010).  "[T]here is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law."  *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000) (quotations omitted).  Refusing to suppress in such situations "would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey."  *Id.* (quotations omitted).

Based upon the NIT material it received and follow up investigation, in February and March of 2015 the FBI began seeking search warrants for homes throughout the country.  Search warrants were executed, evidence of criminal activity was found and individuals were arrested and charged with various crimes relating to child pornography.  According to Peter Carr, a spokesperson from the Department of Justice, in July of 2016 at least 137 cases had been filed in federal courts around the country as a result of the Playpen investigation.

The warrant in Mr. Howard's case was executed over a year after the FBI captured the IP address from his device.  A review of many of the dockets for cases around the country demonstrate that is later in this timeline that most of the cases.   This timing is critical to the Court's decision on this motion.  The timing of Mr. Howard's case creates an issue about the good-faith exception found by courts dealing with earlier warrants.  That is so because by April 4, 2016, the date of the warrant in Mr. Howard's case, the criminal defense community, along with the Electronic Frontier Foundation and the American Civil Liberties Union as *amici*, had filed motions to suppress the evidence obtained as a result of the NIT information as to computers located outside of the Eastern District of Virginia.  Counsel knows of at least five

12

federal cases where motions to suppress challenging the EDVA warrant were pending at the time of the search warrant application in Mr. Howard's case.[5]  The motions were fairly straight forward and based on the fact that the NIT was searching the digital devices and seizing information from them in violation of Federal Rule of Criminal Procedure ("Rule") 41 which at the time authorized magistrate judges to issue warrants to search for and seize a person or property located *within* its district[6].  The EDVA warrant apparently authorized the FBI to use the NIT to search computers outside of the district in violation of then Rule 41.  Once this issue was briefed in 2015 and early 2016, the government was on notice of the issues involved.

The probable cause for the location to be searched offered in the search warrant in Mr. Howard's case is critically based upon the information from the illegal search of his digital devices via the NIT.  At the time of the search warrant application in Mr. Howard's case, the FBI and the United States Attorneys' office knew that the NIT searches and seizures of computers that had logged on to Playpen had been deemed unlawful by at least two district courts and that the issue was being litigated in many courts around the country.  *See United States v. Michaud*, 2016 WL 337263 (W.D. Wash. January 28, 2016), and *United States v. Stamper*, 2016 WL 695660 (S.D. Ohio February 19, 2016).  Both the *Michaud* and *Stamper* Courts found that the EDVA warrant violated then Rule 41(b) because it authorized evidence to be seized outside of the district, but that the technical violation did not require suppression because the Courts found that the FBI agents acted in good faith when executing the warrant.  The *Michaud* and *Stamper* cases clearly put the government on notice that the EDVA warrant was unlawful, if it had not already realized it by virtue of the litigation going on in dozens of courts around the country.  That notice, coupled with existing DOJ policy, in addition to DOJ efforts at the time to amend Rule 41 to allow the NIT searches out of district, prevents the application of the "good-faith" exception to save the search warrant in Mr. Howard's case.

---

[5] *United States v. Michaud*, 15-cr-5351 W.D. Washington; *United States v. Stamper*, 15-cr-109 S.D. Ohio; *United States v. Levin*, 15-cr-10271 D.Massachusetts; *United States v. Arterbury* 15-cr-182 N.D.Oklahoma; *United States v. Werdene*, 15-cr-434 E.D. Pennsylvania.
[6] The Rule has since been amended as a result of the Playpen cases to allow for the NIT the FBI employed here.

13

1

2

3

4

5

6

7

8

9

10

11

    As of the writing of this motion, all Federal Courts of Appeals to address the issue have found that the EDVA warrant violated Rule 41 and that evidence obtained as a result of the warrant was illegally obtained, but that suppression is not required because the "good faith" exception applies.  *See, United States v. Levin*,  874 F.3d 316 (1st Cir. 2017);  *United States v. Werdene*, 883 F.3d 204 (3rd Cir. 2018); *United States v. McLamb*, 880 F.3d 685 (4th Cir. 2018); *United States v. Moorehead*, 912 F.3d 963 (6th Cir. 2019); ("We conclude that even if the NIT Warrant runs afoul of the Fourth Amendment, the good-faith exception to the exclusionary rule applies to preclude suppression."); *United States v. Kienast*, 907 F.3d 522 (7th Cir. 2018); *United States v. Horton*, 863 F.3d 1041 (8th Cir. 2017); *cert. denied*, —— U.S. ——, 138 S.Ct. 1440, 200 L.Ed.2d 721 (2018); *United States v. Henderson*, 906 F.3d 1109 (9th Cir. 2018); *United States v. Workman*, 863 F.3d 1313, 1317 (10th Cir. 2017).

12

13

14

     The import of this is that the legal issue of whether the EDVA warrant was valid is really not controversial.  There is no split in the Circuits – the EDVA warrant was unlawful to search computers located outside of its district.

15

16

### H.   THE DOJ MADE AN "OBVIOUS" MISTAKE OF LAW WHEN IT APPLIED FOR THE WARRANT IN MR. HOWARD'S CASE

17

18

19

20

21

    By the time of the search warrant application in Mr. Howard's case, the government and the FBI were on notice of the defect of the EDVA warrant by way of the pleadings filed throughout the country and the two District Court rulings. Unsurprisingly, every circuit court that has addressed the question has found the NIT warrant violated Rule 41. So have the overwhelming majority of district courts analyzing the NIT warrant.[7]

22

---

23

24

25

26

27

28

[7] Out of approximately 100 district court opinions analyzing the NIT warrant, 82 have found a Rule 41 violation.  *See, e.g., United States v. Taylor*, 250 F. Supp. 3d 1215, 1233-35 (N.D. Ala. 2017); *United States v. Perdue*, 237 F. Supp. 3d 471, 476-77 (N.D. Tex. 2017); *United States v. Pawlak*, 237 F. Supp. 3d 460, 467-68 (N.D. Tex. 2017); *United States v. Deichert*, 232 F. Supp. 3d 772, 782-83 (E.D.N.C. 2017);*United States v. Broy*, 209 F. Supp. 3d 1045, 1056-1057 (C.D. Ill. 2016); *United States v. Hammond*, 263 F. Supp. 3d 826, 831-33 (N.D. Cal. Dec. 8, 2016); *United States v. Kahler*, 236 F. Supp. 3d 1009, 1018-1020 (E.D. Mich. 2017); *United States v. Allain*, 213 F. Supp. 3d 236, 248-251 (D. Mass. 2016); *United States v. Ammons*, 207 F. Supp. 3d 732, 740-42 (W.D. Ky. 2016); *United States v. Knowles*, 207 F. Supp. 3d 585, 599-600 (D.S.C. 2016); *United States v. Halgren*, 2017 WL 3741558, *2-3 (W.D. Tex. Aug. 30, 2017); *United States v. Dorsheff*, 2017 WL 1532267, *5-6 (C.D. Ill. Apr. 27, 2017); *United States v.*

14

Reasonable law enforcement officials are expected to know "what is required of them" under the law, particularly the Constitution.  *Hudson v. Michigan*, 547 U.S. 586, 599 (2006).  That includes understanding the "obvious" jurisdictional and territorial limits of a search warrant – particularly when courts have ruled as such on the particular warrant involved.  The unique facts surrounding the deployment of the NIT in this case is no excuse once the legal issues came to light through motions to suppress and court orders.  Law enforcement "can still be on notice that their conduct violates established law even in novel factual circumstances."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Critically, law enforcement personnel are presumed to know the policies and guidelines of their own departments, particularly when it comes to obtaining and executing search warrants.  *See Groh v. Ramirez*, 540 U.S. 551, 565 (2004).  Here, the DOJ's own policy on searching computers in multiple locations would have made clear the NIT warrant's flaw.  The DOJ's manual on "Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations" ("DOJ Manual") recognizes the problem with using a warrant issued in one district to seize and search digital information stored in another district.[8]  Addressing the precise issue here, the DOJ's Manual states that, when

> data is stored remotely in two or more different places within the United States and its territories, *agents should obtain additional warrants for each location where the data resides to ensure compliance with a strict reading of Rule 41(a).*

*Gaver*, 2017 WL 1134814, *8-9 (S.D. Ohio Mar. 27, 2017); *United States v. Dzwonczyk*, 2016 WL 7428390, *5-8 (D. Neb. Dec. 23, 2016); *United States v. Vortman*, 2016 WL 7324987, *9-11 (N.D. Cal. Dec. 16, 2016); *United States v. Owens*, 2016 WL 7053195, *6-7 (E.D. Wis. Dec. 5, 2016); *United States v. Torres*, 2016 WL 4821223, *4-6 (W.D. Tex. Sep. 9, 2016); *United States v. Adams*, 2016 WL 4212079, *5-6 (M.D. Fl. Aug. 10, 2016).  The panel noted "several district courts have found the very same warrant to be valid."  Slip Op. at 21.  But of the remaining 18 opinions finding the NIT warrant a valid tracking warrant under Rule 41 (b)(4), five are from the Eastern District of Virginia, where there was no violation of Rule 41's territorial limits.  *See United States v. Leonard*, 2017 WL 4478330 (E.D. Va. Oct. 6, 2017); *United States v. McLamb*, 220 F. Supp. 3d 663 (E.D. Va. 2016); *United States v. Eure*, 2016 WL 4059663 (E.D. Va. July 28, 2016); *United States v. Matish*, 193 F. Supp. 3d 585 (E.D. Va. 2016); *United States v. Darby*, 190 F. Supp. 3d 520 (E.D. Va. 2016)).  Two are from the Western District of Missouri and overruled by *Horton.  See United States v. Bee*, 2017 WL 424889 (W.D. Mo. Jan. 31, 2017); *United States v. Johnson*, 2016 WL 6136586 (W.D. Mo. Oct. 20, 2016).

[8] *Available at* https://www.justice.gov/sites/default/files/criminal-ccips/legacy/2015/01/14/ssmanual2009.pdf.

For example, if the data is stored in two different districts, agents should obtain
separate warrants from the two districts.

*See* DOJ Manual at 84-85 (emphasis added).

This policy directive shows why the government could not be acting in "good faith"
when it sought the warrant in this case – particularly in light of the rulings in *Michaud* and
*Stamper.* By April 4, 2016, the date of Mr. Howard's warrant application, DOJ also was in the
midst of seeking an amendment to Rule 41 to allow for the very searches that were done
unlawfully because it was on notice that such searches were unlawful since 2013 when a
magistrate judge in the Southern District of Texas issued an opinion rejecting the government's
request for a search warrant remarkably similar to the EDVA warrant. *See In re Warrant to
Search a Target Computer at Premises Unknown*, 958 F. Supp. 2d 753 (S.D. Tex. 2013. In that
case, the government sought a search warrant that would "surreptitiously install data extraction
software on the Target Computer;" once installed, the software "has the capacity to search the
computer's hard drive, random access memory, and other storage media; to activate the
computer's built-in camera; to generate latitude and longitude coordinates for the computer's
location; and to transmit the extracted data to FBI agents within this district." *In re Warrant*, 958
F. Supp.2d at 755. The government acknowledged that it did not know the location of the
suspects or their computer. The magistrate judge denied the warrant, noting that he had no
authority under Rule 41(b) to issue a warrant because it was possible the computer would be
outside the Southern District of Texas. *Id*. at 756-58, 761.

Rather than appeal the magistrate judge's decision, the DOJ instead proposed to amend
Rule 41 to allow precisely what it did here. An Amendment to Rule 41 sent to Congress by the
Supreme Court in April 2016 permits "a magistrate judge with authority in any district where
activities related to a crime may have occurred…to issue a warrant to use remote access to search
electronic storage media and to seize or copy electronically stored information located within or

16

outside that district if: (A) the district where the media or information is located has been concealed through technological means." This amendment is now codified in Federal Rule of Criminal Procedure 41(b)(6), which went into effect on December 1, 2016.

What is crucial here is that the purpose of this Amendment was to respond specifically to the magistrate judge's decision in *In re Warrant.* In the Preliminary Draft of the proposed amendment, released August 2014, the Judicial Conference's Committee on Rules of Practice and Procedure explained that the reason for the proposed Rule change was because:

> one judge recently concluded that the territorial requirement in Rule 41(b)
> precluded a warrant for a remote search when the location of the computer was
> not known, and he suggested that the Committee should consider updating the
> territorial limitation to accommodate advancements in technology.

Preliminary Draft of August 2014 Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil and Criminal Procedure at p. 325 (citing *In re Warrant*).[9] Public comment on the proposed Rule Amendment was open until February 17, 2015, three days before the government sought the NIT warrant.[10]

Thus, the DOJ itself was fully aware that the territorial and jurisdictional limitations of Rule 41 did not permit the multi-district computer hacking warrant that eventually led to creating the probable cause for the warrant in this case. DOJ internal policies advised agents to obtain warrants from multiple districts in identical scenarios. A magistrate judge had rejected a similar warrant request and the DOJ was seeking to amend Rule 41 to expand a magistrate judge's jurisdiction. Nonetheless, FBI agents, with the assistance of federal prosecutors, sought the warrant in Mr. Howard's case knowing that 1) a magistrate in 2013 had rejected a warrant for the same reason the EDVA warrant was held to be unlawful; 2) its own internal policy prohibited the search and seizure of Mr. Howard's computer using the EDVA warrant; 3) District Courts had found the EDVA warrant unlawful and 4) DOJ itself was involved in the Rule 41 change that would allow such warrants in the future.

Thus the unlawful seizure of the IP address information used in the warrant application

---

[9] *Available at* https://www.regulations.gov/document?D=USC-RULES-CR-2014-0004-0001.
[10] *See* https://www.regulations.gov/docket?D=USC-RULES-CR-2014-0004.

Motion to Suppress

was known to the government.  The good-faith exception simply does not apply.

## I.  THE WARRANT IS DEFECTIVE BECAUSE IT DOES NOT ALERT THE MAGISTRATE JUDGE THAT ITS PROBABLE CAUSE INFORMATION WAS ILLEGALLY OBTAINED

The good-faith exception may not always be invoked when "the search warrant was issued in part on the basis of evidence obtained from an illegal search."  *United States v. Artis*, ____ F.3d ____, 2019 WL 1375260 (9th Cir. March 27, 2019) citing, *United States v. Wanless,* 882 F.2d 1459, 1466–67 (9th Cir. 1989); *see also United States v. Vasey*, 834 F.2d 782, 789 (9th Cir. 1987)(suppressing evidence seized as a result of a warrant where the probable cause for the warrant was illegally obtained). To assert good faith reliance successfully, law enforcement must disclose all potentially adverse information to the issuing judge. *See United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir.) ("The good-faith exception to the exclusionary rule does not protect searches by officers who fail to provide all potentially adverse information to the issuing judge...."), *aff'd and amended*, 91 F.3d 331 (2d Cir. 1996) (*per curiam*); see also *United States v. Thomas*, 757 F.2d 1359, 1368 (2d Cir. 1985) (finding good faith reliance on a warrant, under Leon, where officers, first, committed a constitutional violation they did not reasonably know, at the time, was unconstitutional—a warrantless canine sniff—and second, in relying on evidence from this sniff in a warrant application, fully revealed the fact of the canine sniff to a magistrate judge)(citations omitted.) As noted by the Eighth Circuit, "[i]f clearly illegal police behavior can be sanitized by the issuance of a search warrant, then there will be no deterrence, and the protective aims of the exclusionary rule will be severely impaired if not eliminated." *United States v. O'Neal*, 17 F.3d 239, 243 n.6 (8th Cir. 1994); *see also United States v. McGough*, 412 F.3d 1232, 1240 (11th Cir. 2005) ("In this case, it was not an 'objectively reasonable law enforcement activity' but rather the officers' unlawful entry into [defendant's] apartment that led to [the officer's] request for a search warrant. In such a situation, 'the search warrant affidavit was tainted with evidence obtained as a result of a prior, warrantless, presumptively unlawful entry into a personal dwelling.' "); *United States v. Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989) (noting that "good-faith exception does not apply where a search warrant is issued on the basis of evidence obtained as the result of an illegal search"); *United States v. Reilly*, 76 F.3d 1271, 1280

18

(2d Cir. 1996) (declining to apply the good-faith exception when the "issuance of the warrant was itself premised on material obtained in a prior search that today's holding makes clear was illegal"); *United States v. Mowatt*, 513 F.3d 395, 405 (4th Cir. 2008) *abrogated on other grounds by Kentucky v. King*, 563 U.S. 452 (2011) ("The *Leon* exception does not apply here because *Leon* only prohibits penalizing officers for their good-faith reliance on magistrates' probable cause determinations. Here, the exclusionary rule operates to penalize the officers for their violation of [defendant's] rights that preceded the magistrate's involvement."); *United States v. Vasey*, 834 F.2d 782, 789 (9th Cir. 1987) (holding that *Leon* exception did not apply when warrant was based on information obtained in illegal warrantless search because "[t]he constitutional error was made by the officer ..., not by the magistrate"); *United States v. Davis*, 430 F.3d 345, 358 n.4 (6th Cir. 2005) ("[W]e agree with the numerous other circuits that have held that the Leon good-faith exception is inapplicable where a warrant was secured in part on the basis of an illegal search or seizure.").

Because the later-issued warrant was based on an illegal search, the evidence obtained through the use of the warrants should be excluded as fruit of the poisonous tree. *See Nix v. Williams*, 467 U.S. 431, 441, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (*citing Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)); *see also Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) ("[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' ") (citation omitted). The good-faith exception limits exclusion where "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 922.

Where the benefits produced by suppressing the evidence are not merely marginal or nonexistent and do justify the costs of exclusion, the good-faith exception does not apply. See Massi, 761 F.3d at 537 (Graves, J., dissenting) (citing Leon, 468 U.S. at 922, 104 S.Ct. 3405).

Motion to Suppress

### J.   SUPPRESSION OF THE EVIDENCE AGAINST MR. HOWARD IS AN APPROPRIATE REMEDY

When the affidavit for a search warrant contains evidence illegally obtained, the Court will purge the tainted evidence before it examines "whether the remaining facts still afforded a substantial basis for concluding that the search warrant was supported by probable cause." *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001).  In this case, without the illegally obtained IP address, there are no remaining facts that afford a substantial basis for concluding that the search warrant was supported by probable cause for Mr. Howard's residence or devices.

The rationale behind suppressing evidence obtained from law enforcement's mistake of law is "to make certain that they properly understand the law that they are entrusted to enforce and obey."  *Lopez-Soto*, 205 F.3d at 1106.

In this case, the government used knowingly illegally obtained information to apply for a search warrant.  *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001).  Suppression under these circumstances deters the government from a "deliberate, culpable, and systemic" disregard of the Fourth Amendment.  *Song Ja Cha*, 597 F.3d at 1004.

Circuit Courts did not suppress evidence in the initial Playpen cases because they have found that law enforcement acted in good faith when it executed the EDVA warrants and that suppression would not serve to deter future misconduct.  This was primarily based upon timing. The Courts essentially let the government "off the hook" for not knowing how Rule 41 would be interpreted to apply to the NIT and for not following its own manual.  However, the timing of Mr. Howard's search warrant application in April of 2016 is different and came at a time when the government could no longer feign blindness to the dictates of Rule 41 or to the unlawful nature of the EDVA warrant allowing the execution of searches outside its district.

Surely today, the government would have to acknowledge that the EDVA warrant executed outside of the EDVA would be invalid under Rule 41 as it existed at the time.  "Good faith" is no longer "good" once the government has notice of the illegality of the search.

If the government acted upon information gained from the EDVA warrant outside of the EDVA today, they could not claim to be acting in good faith.  The question is at what point along the timeline did the "good faith" exception no longer apply.  Mr. Howard submits that by

20

April 4, 2016, the government cannot claim to act in good faith when it used the unlawfully

obtained information to get a search warrant.

**CONCLUSION**

WHEREFORE, for the reasons stated above and any other that this Honorable Court

deems just and proper, Mr. Howard moves to suppress the evidence against him that was seized

as a result of the search warrant as well as the statements made during and after the execution of

the warrant. Mr. Howard respectively requests an evidentiary hearing on any disputed facts.

DATED: April 16, 2019                    Respectfully submitted,

                                         HEATHER E. WILLIAMS
                                         Federal Defender

                                         */s/ Lexi P. Negin*
                                         LEXI P. NEGIN
                                         Assistant Federal Defender
                                         Attorneys for SCOTT HOWARD

Motion to Suppress